United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RON RODRIGUEZ, et al.,

        Plaintiffs,

        v.

UNITED AIRLINES, INC., et al.,

        Defendants.

_____/

No. C 13-2987 PJH

**ORDER GRANTING MOTIONS TO DISMISS**

    Defendants' motions to dismiss the first amended complaint came on for hearing before this court on November 20, 2013.  Plaintiffs appeared by their counsel Thomas F. Friedberg; defendant United Airlines, Inc. appeared by its counsel Michael L. Fox; and defendant Leading Edge Aviation Services, Inc. appeared by its counsel Jeffrey G. Jacobs. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motions as follows.

## BACKGROUND

    In this personal injury case, plaintiffs Ron Rodriguez, Lawrence McClarty, Martin Dergen, Tony Cappabianca, Romulado Alvarez, Eric Driggs, Randy Maddox, Brian Sullivan, John Cho, Donald Hegelsen, Roy Jensen, John Ross, and Steve Lewandowski filed suit against defendants United Airlines, Inc. ("United") and Leading Edge Aviation Services, Inc. ("Leading Edge") in May 2013.  Plaintiffs allege that they were injured in the workplace by exposure to hexavalent chromium.

    Defendants removed the case to this court, asserting jurisdiction based on federal defenses, and then moved to dismiss the original complaint for failure to state a claim.  The

1  court granted the motions, with leave to amend to allege facts supporting the elements of

2  the claims.

3      Plaintiffs were employed by United as aircraft mechanics.  They allege that

4  beginning in about 1998, United developed a maintenance program for repairs to the F117,

5  a United States Air Force ("USAF") aircraft.  As part of this maintenance program, United

6  developed procedures for repairs to the F117, including the inlet cowl assembly.  These

7  repairs included sanding the F117 nose inlet cowls to remove paint and primer.  In order to

8  accomplish this work, United set up a sanding booth at its San Francisco Maintenance

9  Center.

10     Each of the plaintiffs asserts that he was assigned to work in the United sanding

11 booth, 1-3 times a week, for up to four hours at a time, using a power orbital sander to

12 remove the gray paint and the green primer from the nose inlet cowls.  Plaintiffs claim that

13 the green primer used on the F117 inlet cowls contained hexavalent chromium, and that

14 the sanding caused hexavalent chromium particles to become airborne.  Plaintiffs allege

15 that from 2003 until June 11, 2011, they were exposed to higher than Permissible Exposure

16 Limit of hexavalent chromium, and that United failed to provide sufficient protective gear,

17 such as appropriate HEPA filters, and failed to provide vacuums to remove the

18 carcinogenic dust before it could reach the workers' faces.

19     Plaintiffs contend that hexavalent chromium is a known carcinogen that can cause

20 lung cancer if inhaled at sufficient concentrations, and can also adversely affect the

21 respiratory tract and the skin and eyes.  They assert that United was aware of the toxicity of

22 hexavalent chromium from the relevant Material Safety Data Sheet, and that it employed

23 individuals whose job it was to monitor hexavalent chromium exposure.  Each of the 13

24 plaintiffs alleges a cause of action against United, asserting  the fraudulent concealment

25 exception to California Labor Code § 3602(b)(2).

26     In addition to the claims asserted against United, five of the plaintiffs (Rodriguez,

27 Dergen, Driggs, Maddox, and Sullivan) also each allege a cause of action for negligence

28 against Leading Edge.  They assert that following United's receipt of a violation notice from

1   Cal-OSHA on June 20, 2011, for knowing exposure of its workers to carcinogenic levels of

2   hexavalent chromium, United suspended its sanding operations at the San Francisco

3   Maintenance Center, and subcontracted the work to Leading Edge.

4        Plaintiffs allege that from June 20, 2011, until September 2011, Leading Edge

5   sanded the nose inlet cowls while the nose inlet cowels were in the crates; that Leading

6   Edge then shipped the crates containing the sanded nose inlet cowls back to United, where

7   plaintiffs Rodriguez, Dergen, Driggs, Maddox, and Sullivan were tasked with opening the

8   crates; and that when they did so, they were further exposed to carcinogenic levels of

9   hexavalent chromium.

10       Defendants now seek an order dismissing the FAC for failure to state a claim.

11                                    **DISCUSSION**

12  A.    Legal Standards

13       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

14  sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

15  1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

16  Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

17  a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

18  minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

19  that a complaint include a "short and plain statement of the claim showing that the pleader

20  is entitled to relief." Fed. R. Civ. P. 8(a)(2).

21       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

22  plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

23  a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

24  1990).  The court is to "accept all factual allegations in the complaint as true and construe

25  the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group,

26  Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, legally

27  conclusory statements, not supported by actual factual allegations, need not be accepted.

28  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The allegations in the complaint "must be

United States District Court

For the Northern District of California

3

United States District Court

For the Northern District of California

1   enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v.

2   Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

3       A motion to dismiss should be granted if the complaint does not proffer enough facts

4   to state a claim for relief that is plausible on its face.  See id. at 558-59.  A claim has facial

5   plausibility when the plaintiff pleads factual content that allows the court to draw the

6   reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

7   U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to

8   infer more than the mere possibility of misconduct, the complaint has alleged – but it has

9   not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.  In the event dismissal is

10  warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved

11  by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

12      In actions alleging fraud, "the circumstances constituting fraud or mistake shall be

13  stated with particularity." Fed. R. Civ. P. 9(b).  Under Rule 9(b), "allegations of fraud must

14  be specific enough to give defendants notice of the particular misconduct which is alleged

15  to constitute the fraud charged so that they can defend against the charge and not just

16  deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019

17  (9th Cir. 2001) (citation and quotations omitted).

18  B.    United's Motion

19      United argues that the fraudulent concealment claims asserted against it by each of

20  the plaintiffs must be dismissed for failure to state a claim.

21      "[A]n employee injured during the course of employment is generally limited to

22  remedies available under the Workers' Compensation Act." Jensen v. Amgen, Inc., 105

23  Cal. App. 4th 1322, 1325 (2003).  An employee who suffers an injury in the course of his

24  employment may recover damages in an action at law only if he comes within certain

25  exceptions to the workers' compensation law. Foster v. Xerox Corp., 40 Cal. 3d 306, 308

26  (1985); see also Silas v. Arden, 213 Cal. App. 4th 75, 91 (2012).

27      One of these exceptions is embodied in Labor Code § 3602(b)(2).  Under this

28  exception, "an employee . . . may bring an action at law for damages" against his/her

4

United States District Court

For the Northern District of California

employer "[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation."  Cal. Lab. Code § 3602(b)(2).

Thus, to recover under the fraudulent concealment exception, the plaintiff must prove that the employer knew of the plaintiff's work-related injury, that the employer concealed the knowledge from the plaintiff, and that the injury was aggravated as a result of such concealment.  Foster, 40 Cal. 3d at 312.  If one of those conditions is lacking, the exception does not apply and the employer is entitled to judgment in its favor.  Hughes Aircraft Co. v. Superior Court, 44 Cal. App. 4th 1790, 1797 (1996).

The term "fraudulent concealment" as used in Labor Code § 3602(b)(2) has the same meaning as in California Civil Code §§ 1709 and 1710.  See Foster, 40 Cal. 3d at 309-10; see also 2 Witkin, Summary of California Law (10th ed. 2005), Workers Compensation § 45.  Under California law, the elements of fraudulent concealment are

(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage.

Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1156 n.3 (9th Cir. 2000).

In federal court, Rule 9(b) requires that facts showing fraudulent concealment, like other fraud claims, be pled with specificity.  Grant v. Aurora Loan Services Inc., 736 F.Supp.2d. 1257, 1273 (C.D. Cal. 2010); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-06 (9th Cir. 2003).  Mere conclusory allegations of fraud are insufficient.  Moore v. Kayport Package Express, 885 F.2d 531, 540 (9th Cir. 1989).

United argues that the claims against it must be dismissed because plaintiffs have failed to allege facts supporting the required elements of the fraudulent concealment exception in Labor Code § 3602(b)(2), including United's knowledge of the injury, United's concealment of the injury, and the resulting aggravation of the injury; and have also failed to allege the elements of fraudulent concealment with specificity.  In particular, United

5

United States District Court

For the Northern District of California

1  argues that the facts alleged are insufficient as a matter of law under <u>Hughes</u> to show that

2  United concealed knowledge of the plaintiffs' injuries.

3          In <u>Hughes</u>, four employees sued their aircraft company employer for work injuries

4  incurred from exposure to various chemical substances at the workplace.  They

5  experienced headaches, sore throats, fatigue, sinus problems, chest pain and voice loss.

6  One of the plaintiffs reported her injuries to the company's medical center, but the employer

7  did not advise the plaintiffs about their work environment or the cause of their injuries, and

8  the plaintiffs' health continued to decline.  <u>Id</u>., 44 Cal. App. 4th at 1792-93.

9          The plaintiffs filed a civil action, and the employer moved for summary judgment,

10  arguing that the plaintiffs' claims failed to come within the § 3602(b)(2) exception.  <u>Id</u>. at

11  1793.  The trial court denied the motion, but the Court of Appeal reversed.  The court found

12  that the facts presented by the plaintiffs could never successfully state a claim:  "Here, it is

13  undisputed [that the defendant employer] first learned of plaintiffs' injuries from plaintiffs

14  themselves.  Therefore, plaintiffs will be unable to prove defendant concealed the existence

15  of their injuries and will be unable to prevail."  <u>Id.</u> at 1794.

16          The fundamental problem for the <u>Hughes</u> plaintiffs was that the defendant employer

17  did not learn of the plaintiffs' injuries until the plaintiffs told their employer.  A defendant

18  "obviously [cannot]  be charged with concealing matters about which it did not know."

19  <u>Foster</u>, 40 Cal. 3d at 312.  That is, an employer cannot conceal an injury if the plaintiff

20  himself tells the employer about the injury.  For this reason, "[t]he exception does not apply

21  where the employee was aware of the injury at all times."  <u>Silas</u>, 213 Cal. App. 4th at 91

22  (citing <u>Jensen</u>, 105 Cal. App. 4th at 1326).

23          United argues that this is what the plaintiffs allege here.  The FAC asserts that

24  "Plaintiffs reported to their supervisors at United that they were experiencing injuries in the

25  form of irritation to their nose, throat, lungs, eye and skin while at work."  FAC  ¶10.  United

26  contends that even if this allegation were sufficiently plausible and particular with regard to

27  plaintiffs' alleged injuries, California law bars an employer's liability under the fraudulent

28  concealment exception when the employer first learns of the injury from the plaintiff.

1   To state a claim under the § 3602(b)(2) exception, a plaintiff must allege actual

2   knowledge of both "the existence of the injury and its connection with the employment."

3   Jensen, 105 Cal. App. 4th at 1328 (citing Hughes, 44 Cal. App. 4th at 1795).  Thus, United

4   asserts, if – as plaintiffs allege in the FAC – plaintiffs told United about their injury, they

5   necessarily knew about the injury.  And if they already knew about the injury, United could

6   not have concealed the existence of the injury from them.  Accordingly, United contends,

7   the FAC fails to allege a required element of the fraudulent concealment exception cause of

8   action.

9   United argues that plaintiffs have incorrectly conflated "exposure" with "injury."  For

10  example, plaintiffs allege in the FAC that "United . . . failed to advise [p]laintiffs that the

11  injuries to their respiratory system and exposed skin, including the risk of cancer, was

12  occurring each time [p]laintiffs were exposed to [h]exavalent [c]hromium."  FAC ¶ 14.

13  Under the heading, "United's Knowledge of Injury," plaintiffs allege that United

14      was aware that [p]laintiffs' [sic] were being exposed to levels of [h]exavalent
        [c]hromium dust in amounts significantly greater than the Action Levels and
15      PEL, that [p]laintiffs' [sic] had sustained injuries to their respiratory systems
        and exposed skin due to the exposure, that [p]laintiffs' [sic] complained to
16      their supervisors at United of their injuries, that United concealed from
        [p]laintiffs' [sic] that their injuries were caused by the exposure and that the
17      continuous and repeated re-exposure was aggravating their injuries.

18  FAC ¶ 17.

19  Again, under the heading, "United's Concealment of Potential for Work-Related

20  Injury," plaintiffs allege that "United concealed that repeated re-exposure to excessive

21  levelsof [h]exavalent [c]hromium dust without appropriate engineering controls and

22  personal protective equipment had initially caused each [p]laintiffs' [sic] injuries.  FAC

23  ¶ 18.  United argues that "Concealment of Potential for Work-Related Injury" is simply a

24  synonym for "exposure" – which is not the same thing as "injury," and cannot be used to

25  support the § 3602(b)(2) exception.

26  With regard to the third element of the "fraudulent concealment" exception, United

27  argues that plaintiffs never allege the required "aggravation" element – that their injuries

28  were aggravated by United's concealment of those injuries.  United notes that plaintiffs use

United States District Court

For the Northern District of California

1    the word "aggravated," see, e.g., FAC ¶ 15, but the referenced "aggravation" is simply more

2    of the same alleged injury.

3         In opposition, plaintiffs argue that the complaint satisfies the pleading requirements

4    for stating a claim under the fraudulent concealment exception, as set forth in the

5    Foster decision.  In that case, an injured employee filed a complaint against his employer

6    seeking to recover damages.  The complaint alleged that defendant knew plaintiff had

7    contracted arsenic poisoning from his employment and had concealed that knowledge from

8    him, thereby aggravating his illness.  The defendant demurred to the complaint on the

9    ground that it was barred by § 3602, and the trial court sustained the demurrer without

10   leave to amend.

11        The Supreme Court reversed.  The court first observed that the primary issue to be

12   resolved was whether the "fraudulent concealment" referred to in § 3602 requires

13   affirmative misrepresentations by the employer regarding the existence of the injury and its

14   connection with the employment, or whether the employer may be held liable in an action at

15   law if he merely knew of these matters but failed to reveal them to the employee.  Id., 40

16   Cal. 3d at 308-09.  The court concluded that affirmative misrepresentations are not

17   required to support such an action.  Id.

18        The court held that an employee seeking to state a cause of action against an

19   employer under § 3602(b)(2) must "in general terms" plead facts showing that the employer

20   knew the employee had suffered an employment-related injury, that the employer

21   concealed that knowledge from the plaintiff, and that the injury was aggravated as a result

22   of that concealment.  Id. at 312.  Plaintiffs contend that this court should apply the same

23   standard in this case.

24        With regard to United's argument that it could not have concealed knowledge of

25   plaintiffs' injuries because it did not know about those injuries until plaintiffs reported the

26   symptoms, plaintiffs respond that this argument ignores the allegations in the FAC that

27   United knew from the beginning of its F117 maintenance program of the injuries that would

28   be caused by exposing its employees to dangerous levels of hexavalent chromium dust,

United States District Court

For the Northern District of California

1  and the allegations that United was required by state and federal regulations to monitor the

2  levels of toxic chemicals to which plaintiffs were exposed.

3      Plaintiffs contend that the allegations that United knowingly exposed plaintiffs to

4  levels of hexavalent chromium dust that United knew was causing them injuries is sufficient

5  to allege United's knowledge of plaintiffs' injuries long before plaintiffs reported their own

6  symptoms to their supervisors – and that in any event, plaintiffs did not know that their

7  injuries were caused by exposure to hexavalent chromium.  Plaintiffs believe that discovery

8  into United's monitoring records will show the exact nature and extent of United's prior

9  knowledge.

10      Plaintiffs assert that the Hughes case is inapplicable because it involved a motion for

11  summary judgment, and did not address the initial pleading requirements for a

12  § 3602(b)(2) claim.  Here, plaintiffs suggest, instead of following Hughes, the court should

13  be following the state court decisions that address standards for pleading a § 3602(b)(2)

14  claim, such as Foster, 40 Cal. 3d at 312; and Palestini v. General Dynamics Corp., 99 Cal.

15  App. 4th 80, 87 (2002).

16      Plaintiffs argue that the FAC sufficiently alleges that United knew that plaintiffs had

17  been injured by exposure to hexavalent chromium, that such exposure had "injured

18  [p]laintiffs' respiratory tract, eyes and skin, and that repeated exposure over time increased

19  the likelihood that [p]laintiffs would develop lung cancer, yet concealed that knowledge from

20  [p]laintiffs;" and that plaintiffs injuries were aggravated by the repeated exposure.  Thus,

21  plaintiffs assert, the FAC meets the general standard set forth in Foster, because it

22  adequately alleges "in general terms" that plaintiffs were injured by exposure to hexavalent

23  chromium, which increased their risk of developing cancer.

24      The court finds that the motion must be GRANTED.  Plaintiffs have not alleged the

25  requisite elements of the § 3602(b)(2) exception – that United knew of each plaintiff's

26  workplace injury, that United concealed that knowledge from each plaintiff, and that the

27  concealment aggravated the injury.  Moreover, they are conflating knowledge of exposure

28  with knowledge of injury, which is insufficient to support a § 3602(b)(2) claim as a matter of

9

United States District Court

For the Northern District of California

1   law.

2       Plaintiffs allege that United was aware of the toxicity of hexavalent chromium from

3   the relevant Material Safety Data Sheets; that United was aware that workers exposed to

4   hexavalent chromium were likely to develop job related injuries to their respiratory system;

5   that United knew that plaintiffs were being exposed to hexavalent chromium" at significant

6   levels;" that United knew that plaintiffs had sustained injuries to their respiratory systems

7   and exposed skin due to the exposure; that plaintiffs complained to their supervisors at

8   United of their injuries; and that United concealed from plaintiffs that their injuries were

9   caused by the exposure and that the continuous and repeated re-exposure was

10  aggravating their injuries.  See FAC ¶¶ 7, 10, 17.

11      Under Hughes, plaintiffs' claims are precluded because the FAC alleges that United

12  learned of the injuries from plaintiffs themselves.  Moreover, even after receiving leave to

13  amend, plaintiffs have still not provided specific details of the alleged injuries and the

14  alleged aggravation of those injuries.  Contrary to what plaintiffs suggest in their opposition,

15  state court pleading standards do not apply in this case; rather, plaintiffs are required to

16  comply with federal rules of pleading.

17      Foster was a state court case, where the court allowed the plaintiffs claims to

18  proceed only because of the state statutory requirement to "liberally construe pleadings."

19  Id., 40 Cal. 3d at 312.  A state court's policy of "liberally construing pleadings" does not

20  eliminate the federal court requirements of pleading with both plausibility and particularity.

21      When a plaintiff initially files his complaint in state court, and (as here) it is removed

22  to federal court, the complaint becomes subject to federal pleading requirements under

23  Rule 8, and the question whether the allegations are sufficient under state-court pleading

24  requirements becomes irrelevant.  See, e.g., Provencio v. Armor Holdings, Inc., 2007 WL

25  2814650 at *2 (E.D. Cal. Sept. 25, 2007) (citing Granny Goose Foods, Inc. v. Brotherhood

26  of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 438

27  (1974)).  Thus, for example, the key allegation of United's knowledge of the alleged injuries

28  is not merely an issue of fact to be developed through discovery, but rather is an essential

United States District Court

For the Northern District of California

1  element of the cause of action and must be pled with particularity under Rule 9(b).

2       A second difference between the present case and <u>Foster</u> is that in <u>Foster</u>, the

3  plaintiff alleged that the defendant had fraudulently concealed from him that his injuries

4  were connected with his employment, whereas in the present case, plaintiffs allege that

5  they reported to their supervisors that they were experiencing injuries "while at work."

6  <u>See</u> FAC ¶ 10.  Thus, there is no possible way United could have "concealed" that the

7  asserted injuries were connected to employment, because, as plaintiffs allege, they already

8  knew their injuries were connected with their work.

9       Plaintiffs have not alleged the elements required to state a claim under the

10  "fraudulent concealment" exception, and have failed to plead fraud with particularity.  In

11  particular, plaintiffs have not alleged that United knew about their injuries – only that United

12  knew that exposure to hexavalent chromium was hazardous – and does not allege that

13  United concealed those injuries from plaintiffs – only that United concealed the hazards of

14  exposure from plaintiffs.

15  C.    Leading Edge's Motion

16       Leading Edge argues that the claims against it must be dismissed because plaintiffs

17  have failed to state sufficient facts to support a cause of action for negligence.  Plaintiffs

18  allege that Leading Edge acted "negligently and carelessly" in the sanding, crating, and

19  shipping of the crates containing the F117 nose inlet cowls, and in failing to advise United

20  that the crates contained loose particles of hexavalent chromium.  Plaintiffs allege that this

21  "negligent" conduct caused them to suffer further injuries from exposure to hexavalent

22  chromium.

23       The elements of a cause of action for negligence are duty, breach, causation, and

24  damages.  Cal. Civ. Code § 1714(a); <u>Rowland v. Christian</u>, 69 Cal. 2d 108, 118-19 (1968).

25  Leading Edge contends that plaintiffs have failed to plead facts showing that it owed them a

26  duty of care, that it breached that duty, or that its alleged breach caused plaintiffs to be

27  damaged.

28       The existence of a duty to use due care toward the interest of another is a "threshold

United States District Court

For the Northern District of California

1  element" of a cause of action for negligence.  Bily v. Arthur Young Co., 3 Cal. 4th 370, 397

2  (1992).  Leading Edge asserts that the claims asserted against it should be dismissed

3  because plaintiffs have failed to allege a statute or contract giving rise to a duty, and have

4  failed to sufficiently allege that it owed a duty to the plaintiffs on any other basis. Instead, it

5  asserts, plaintiffs repeatedly allege only that Leading Edge "acted negligently and

6  carelessly."

7      Leading Edge notes that plaintiffs also allege that it "owed a legal duty to those who

8  would foreseeably open the crates that contained the [h]exavalent [c]hromium dust

9  particles in levels significantly greater than the Action level and PEL," FAC ¶ 205, but this is

10 essentially an allegation that Leading Edge owed some limitless duty not to cause injury to

11 plaintiffs by this toxic substance.  Leading Edge notes that a duty may be premised on the

12 general character of the activity, the relationship of the parties, or the nature of human

13 society, but that the duty plaintiffs are alleging is so broad in nature as to impose a duty

14 with regard to any type of damage to anyone, and would impose limitless liability upon

15 society.

16     The factors that traditionally are used to determine the existence and scope of duty

17 in a particular case are (1) the forseeability of harm to the plaintiff, (2) the degree of

18 certainty that the plaintiff suffered injury, (3) the closeness of the connection between the

19 defendant's conduct and the injury suffered, (4) the moral blame attached to the

20 defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden

21 on the defendant and the consequences to the community of imposing a duty to exercise

22 care with resulting liability for breach, and (7) the availability, cost, and prevalence of

23 insurance for the risk involved.  Rowland, 69 Cal. 2d at 113.

24     Leading Edge asserts that under the factors set forth above, plaintiffs cannot allege

25 that Leading Edge owed them any duty of care.  Leading Edge also cites to the general rule

26 that a contractor owes no duty of care to an employee of another contractor.  In Kinsman v.

27 Unocal Corp., 37 Cal. 4th 659 (2005), the California Supreme Court held that under

28 worker's compensation principles, which provide exclusive remedies for such workers, the

United States District Court
For the Northern District of California

1   duty to provide safety equipment to an employee is that of his/her own employer, and a

2   general contractor is relieved of any such duty to an employee of a subcontractor.  Id. at

3   681.  The court explained that such defendants are not liable for injuries caused by others

4   to employees of independent subcontractors pursuant to the exclusive remedy provision of

5   Privette v. Superior Court, 5 Cal. 4th 698 (1993).  Id.

6        Finally, Leading Edge contends that in addition to failing to identify any duty that it

7   owed to plaintiffs, plaintiffs have failed to adequately allege a breach of any duty; and have

8   also failed to allege facts showing that Leading Edge was the cause of any injury they

9   suffered, given that their injury was supposedly exposure to the very same hexavalent

10  chromium that they were exposed to in the course of their work with United.

11       In opposition, plaintiffs assert that the FAC alleges that Cal-OSHA and Federal

12  OSHA regulations create a duty of care, and that these regulations can be used to show a

13  duty of care to the same extent as any other regulation or statute.  In support, plaintiffs rely

14  on Elsner v. Uveges, 34 Cal. 4th 915, 935-36 (2004).  Plaintiffs assert further that the FAC

15  alleges that Leading Edge breached its duty of care by exposing plaintiffs to toxic

16  hexavalent chromium dust, and that plaintiffs were injured as a result of that exposure.

17  Plaintiffs contend that it is premature to attempt to apportion liability between United and

18  Leading Edge, and that the parties must conduct discovery into "the relative responsibility

19  of the two defendants" with regard to the injuries suffered by the five plaintiffs who sued

20  both United and Leading Edge.

21       Plaintiffs assert further that there is no merit to Leading Edge's argument that it is

22  entitled to claim worker's compensation exclusivity despite the fact that it is not plaintiffs'

23  employer.  They contend that the cases cited by Leading Edge specifically provide that a

24  third party may be liable for injuring another's employee if the third party "affirmatively

25  contributed" to the employee's injuries, which is what plaintiffs claim they are alleging in this

26  case – that Leading Edge's negligence effectively contributed to their injuries as described

27  in the FAC.

28       The court finds that the motion must be GRANTED, because plaintiffs have failed to

1   allege facts sufficient to support the elements of the cause of action for negligence.  In

2   particular, the FAC does not set forth what duty Leading Edge owed to the plaintiffs.

3   Moreover, the FAC does not allege facts sufficient to show that Leading Edge "affirmatively

4   contributed" to their injuries which were allegedly caused by United.  See Privette, 5 Cal.

5   4th at 702.

6           Plaintiffs assert that the duty of care is based on federal and state workplace safety

7   regulations.  However, the OSHA and Cal-OSHA regulations set standards that employers

8   must comply with in the workplace.  They do not create a duty on the part of Leading Edge,

9   which was a subcontractor of United – plaintiffs' employer, which had no direct contact with

10  plaintiffs – which would be sufficient to support a cause of action for negligence.

11          The case cited by plaintiffs – Elsner v. Uveges – involved a claim for negligence

12  brought by a roofing subcontractor's employee, who was injured on the job in 1998 and

13  brought a third-party action against the general contractor and its joint venturer on the

14  construction project.  The general contractor filed a motion in limine to exclude references

15  to Cal-OSHA regulations and their alleged violations.  The Superior Court denied the

16  motion and subsequently entered a verdict finding the contractor negligent, because he had

17  furnished a defective scaffolding for use on the job site.  The Court of Appeal reversed,

18  and the Supreme Court granted review.

19          The Supreme Court held that under the 1999 amendment to California Labor Code

20  § 6304.5, Cal-OSHA provisions are admissible in negligence actions, just as any other

21  statute or regulation, including in third-party actions.  The rule prior to the amendment had

22  been that Cal-OSHA regulations could not be used to establish a standard or duty of care

23  in employee negligence actions against non-employers.  However, the Supreme Court also

24  affirmed the decision of the Court of Appeal, on the basis that the use of the Cal-OSHA

25  provision to establish the standard of care was an impermissible retroactive application of

26  the amendment.

27          Nevertheless, the facts in Elsner are clearly distinguishable from the facts in the

28  present case.  In Elsner, the general contractor was responsible for erecting the faulty

14

United States District Court
For the Northern District of California

1  scaffold, on which the plaintiff was required to stand or climb in order to perform the roofing

2  job.  The plaintiff sued the general contractor, and alleged a duty of care based on Cal-

3  OSHA regulations.  Here, Leading Edge performed the sanding work at United's behest,

4  and when the work was completed, returned the F117 nose inlet cowls to United in the

5  crates.  Unlike the general contractor who constructed the defective scaffolding for use on

6  the job – where it was clearly foreseeable that the plaintiff roofer would be climbing or

7  standing on the scaffolding – United (acting as general contractor here) gave Leading Edge

8  the task of sanding the F117 nose inlet cowls, and once the task was completed at Leading

9  Edge's facility, Leading Edge returned the nose inlet cowls to United.

10  Leading Edge did not perform any work that would reasonably have been expected

11  to have some direct impact on the plaintiffs, and there are no allegations that Leading Edge

12  did anything directly to plaintiffs.  Moreover, plaintiffs have alleged no basis for  holding

13  Leading Edge responsible for maintaining compliance with Cal-OSHA regulations at

14  United's San Francisco Maintenance Center.

**CONCLUSION**

16  In accordance with the foregoing, defendants' motions to dismiss are GRANTED.[1]

17  Having previously granted leave to amend, the court finds that granting further leave to

18  amend would be futile.  The dismissal is therefore WITH PREJUDICE.

20  **IT IS SO ORDERED.**

21  Dated:  November 27, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

_____

[1]  Defendants also argue that the case must be dismissed because the facts as pled establish the elements of two federal defenses for military contractors.  The court finds it unnecessary to address this argument, however, as dismissal is warranted on the basis that the FAC fails to state a claim under the worker's compensation law's fraudulent concealment exception as to United, and also fails to state a negligence claim against Leading Edge.